## BUD BROWN v. STATE.

No. A-7297. Opinion Filed Jan. 31, 1930.
(287 Pac. 1070.)

Howe & Douglass, for plaintiff in error.

J. Berry King, Atty. Gen., and J. H. Lawson, Asst. Atty. Gen., for the State.

DAVENPORT, J.  The plaintiff in error, hereinafter referred to as the defendant, was convicted in the district court of Choctaw county of the crime of robbery, and sentenced to imprisonment in the state penitentiary for a period of twenty years.  He filed his motion for new trial, which was overruled, exceptions saved, and the case is appealed to this court.

The testimony, in substance, on behalf of the state, is as follows: Pearl Campbell, the party alleged to have been robbed, at one time had lived in the town of Ft. Towson, and had been away from the country for about a year. A few days prior to the robbery he returned to Ft. Towson, and on his return brought with him a Ford automobile.  Pearl Campbell formed the acquaintance of Bud Brown, Evelyn Britton, and Buster McIntosh. Bud Brown and the complaining witness had been on a deal for the purchase of the Ford car; the deal finally being closed the evening of the alleged robbery in the post office at Ft. Towson, in the presence of Buster McIntosh and others, the defendant paying the complaining witness the sum of $35 and agreeing to pay him $15 additional in a few days.

The money was paid to the complaining witness by the defendant shortly after dark. The complaining witness asked Bud Brown about some girls. Bud replied that he did not know but one and that was his girl. The complaining witness agreed to give Bud $5 if he would make arrangements for him to have a date with his girl.

The testimony of the state further shows the defendant left the complaining witness and was gone a few minutes and returned with Evelyn Britton to where the complaining witness was, and the complaining witness and Evelyn Britton started in the direction of a spring which was some distance from where he met the girl, beyond a gin which is referred to in the evidence; that Evelyn Britton led the way and they walked slowly, consuming some ten or fifteen minutes going in the direction of the spring, where near the spring at a bridge the complaining witness was hit with some kind of a heavy instrument and knocked senseless, and his money to the amount of $37, which included the $35 Brown had paid him, taken from him.

The testimony of the complaining witness is that he did not see the party who struck him and did not remember anything until the following day. Some young men were down near the gin, which is between town and the place where the alleged robbery took place, and about the time Campbell was robbed, Evelyn Britton came by, and one of them inquired where she was going, and she replied, away from Bud Brown. Shortly thereafter Bud Brown came by near these witnesses and some one was with him whom the witnesses did not recognize. The witness Bill Wafer had a short conversation with Bud Brown, the defendant in this case, in which he asked if he had seen Evelyn, and he told him he had, and that she had gone straight up the road, and that Bud then said to the wit-

ness Bill Wafer, "Don't say anything about it," and walked off.

Bill Meggs testified he was acquainted with the parties, and on the night of the robbery he was on top of the hill in the direction of Mrs. Collins' house, between the Collins house and the spring, when the robbery occurred; that he met Pearl Campbell, the complaining witness, going in the direction of town; Campbell was bleeding and looked like he had been beat up. The testimony further tends to show that, thirty minutes to an hour after the Britton girl and Bud Brown had been seen near the spring, the defendant was seen near the drug store in Ft. Towson, and invited Bill Wafer to get in the car, after which the defendant drove to Scott's Rooming House and back toward the gin, where they met Cotton Stanfer and the complaining witness, and took them in the back seat and drove on the highway with the complaining witness; that the defendant drove the complaining witness to the office of Dr. R. H. Faught, at Ft. Towson, and the doctor examined the complaining witness; that there were contusions on his head and he was bleeding at the right ear and through both nostrils; from the appearance of the complaining witness he had been hit with a bumpy something. The defendant called the doctor and told him he wanted him to dress the complaining witness, and asked him what the bill was, and, when told it was $2.50, the defendant paid the bill.

The testimony further shows that later in the evening the defendant and some other parties attended a dance, and that night or the next morning they left the community and were located several miles away by the officers, arrested, and returned to Ft. Towson. The defendant denies he injured the complaining witness, and makes the defense of an alibi; that is, at the time the complaining

witness was injured and robbed, he was in another part of town, and could not have been where the robbery is alleged to have taken place.

The defendant in further support of his alibi called several witnesses to show that he was up town at a certain time, tending to show that he was too far away from the place the robbery is alleged to have occurred to have been at the scene of the robbery. The state showed by Bill Wafer that Evelyn Britton came by where he was, near the place where the robbery was alleged to have taken place, going toward town, and, when he spoke to her, she stated she was running away from Bud Brown; that shortly thereafter Bill Brown, accompanied by some one whom the witness did not recognize in the dark, came from the direction of where the robbery is alleged to have taken place, and asked Bill Wafer if he had seen Evelyn Britton, and witness told him he had. The witness did not identify the other person with Brown, but stated it looked like Buster McIntosh. The record in this case is voluminous, and we have set out, in substance, all the testimony we deem necessary to arrive at an opinion in this case.

The defendant has assigned several errors alleged to have been committed by the court in the trial of his case. We will first consider the third assignment of error, which is as follows:

"That the court committed reversible error in failing to sustain the defendant's objections to the introduction of to sustain the defendant's objections to the introduction of tions which were overruled by the court and the defendants excepted at the time and still except. Said error being in this, to wit: that at the time the witness, Bill Meggs, had been recalled and made a witness for the defendant, while on the stand testified as to where he got the whisky; that he was then interrogated by the court in the presence of the jury as to where he got the whisky; there-

afterwards the court gave the witness for the defendant the following examination in the presence of the jury and the hearing of the jury, which was prejudicial to the defendant's statutory and constitutional rights and affected the jury in its determination of this cause:

" 'Testimony of witness Meggs. Recalled and made a witness for the defendant.

" 'By the Court:

" 'Q. How old are you son? A. Seventeen.

" 'Q. When were you seventeen? A. July 16th.

" 'Q. Were you seventeen when you went after this whisky? A. Yes, sir.

" 'Q. You say you had some hid down there? A. No, sir, I found it down there.

" 'Q. Did you know it was down there? A. Yes, sir.

" 'Q. Do you know who hid it down there? A. No, sir.

" 'Q. How did you find it, where was it? A. I found it that evening.

" 'Q. You found it that evening? A. Yes, sir.

" 'Q. You just found it and got it? A. Yes, sir.

" 'Q. How much was it? A. About a quart.

" 'Q. Did you go down there and hunt for it? A. Yes, sir.

" 'Q. Somebody had rather directed you that you would find some down there? A. No, sir.

" 'Q. You see anybody do something like this, hiding it? A. No, sir.

" 'Q. How came you to go there and find it? A. I thought it was there.

" 'Q. We have a reason for doing things, why did you think it was there? A. I saw it that evening.

" 'Q. I want to know how came you to go—

" 'By Mr. Douglass: If the court please, we would like for the jury to be withdrawn from this testimony. We think it is incompetent, irrelevant and immaterial.

" 'By the Court: This has nothing to do with this lawsuit. Mr. County Attorney you hold this gentleman and as soon as this case is over we will find out something.

" 'By Mr. Howe: We want to note our exceptions to the court's examination of this 'witness on matters incompetent, irrelevant and immaterial, as same might prejudice the rights of this defendant.

" 'By the Court: Gentlemen of the jury, this court's inquiry about this whisky does not have anything to do with this lawsuit and you must not consider it in rendering your verdict in this case. Get cases like this for a court of inquiry and let me be the court and we will find out something about it. There is no question but what they are dodging but they won't get by with it.'

"All of the above was objected to and excepted to at the time by the defendant and the defendant still excepts."

The only question necessary to consider in determining this appeal is the third assignment of the defendant, in which he alleges misconduct on the part of the trial court in his examination of the witness Bill Meggs, in the presence of the jury, and while the case was on trial, in directing the county attorney to hold the witness, and as soon as this case is over we will find out something. The record discloses that the witness Bill Meggs had been called as a witness for the state and had testified, and later on was called by the defendant. The testimony in this case against the defendant was circumstantial; no positive testimony being introduced on behalf of the state as to

the assault made and robbery of the prosecuting witness. The defendant contends that, when the court's attention was called to the fact that his examination of the witness Meggs was not proper before the jury, and the defendant asked that the jury be withdrawn, the court then said:

"Gentlemen of the jury, this has nothing to do with this lawsuit. Mr. County Attorney, you hold this young man and as soon as this case is over we will find out something."

And when counsel interposed an objection to the remarks of the court, the court, without even recognizing counsel for the defense, turned and addressed the jury as follows:

"Gentlemen, just remember this court's inquiry about this whisky does not have anything to do with this lawsuit and you must not consider it in rendering your verdict in this case. Get cases like this for a court of inquiry and let me be that court, and we will find out something about it. There is no question but they are dodging but they won't get by with it."

It is the contention of the defendant that the statements of the court, in substance, told the jury that he did not believe anything the witness Bill Meggs was saying, and that his language, in substance, amounted to saying that the defendant was trying to dodge the question. An examination of the record in this case tends to show that the court was attempting to lead the witness into a confession or to get him to tell something, or to get him to admit he either had the whisky where he went to get a drink or knew who had it there, or, in other words, the language of the court indicated he believed the witness was falsifying.

In Reed v. State, 5 Okla. Cr. 365, 114 Pac. 1114, the court in the first paragraph of the syllabus said:

"When a conviction is had upon a record showing that the trial court in the presence of the jury orders a material witness for defendant, or the defendant, held upon a charge of perjury, alleged to have been committed in giving his testimony in the trial, such judgment will be reversed, and a new trial awarded."

In the second paragraph of the syllabus the court said:

"It is the duty of trial courts to refrain from allowing their actions or words to indicate to the jury their opinion of the credibility of any witness who testifies in a case upon trial before them, or of the merits of any such case."

In Young v. State, 39 Okla. Cr. 100, 263 Pac. 167, in the third paragraph of the syllabus, the court said:

"It is error for a trial court, in ruling on the admissibility of evidence, to make any statement or comment indicating his opinion as to the credibility of any witness or the weight and value of any testimony. For an erroneous statement of the trial court which does not require a reversal, see opinion."

In Koontz v. State, 10 Okla. Cr. 553, 139 Pac. 842, Ann. Cas. 1916A, 689, in the sixth paragraph of the syllabus the court said:

"Judges are as much judges for the defendant as for the state, and are supposed to sit fairly and impartially between the rights of the state, on the one hand, and the defendant, on the other. To become a partisan either for the state or defendant is to desert the high position to which the judge is elevated, and assume the role of the advocate."

In the body of the opinion, there are set forth a number of questions that were propounded to the witness by the court in the trial of the case. Following these questions, the court says:

"By this series of questions and the answers thereto it would seem that the learned trial judge unintentionally indicated to the jury that the witness was worthy of belief, because in his conversation with him he admonished him that the officers wanted no untruth."

In Douglas v. State, 19 Okla. Cr. 257, 199 Pac. 927, this court, in the sixth paragraph of the syllabus, said:

"While it is the right of a trial judge to interrogate witnesses, when essential to the administration of justice, yet the practice. * * * should be discouraged, and when it appears that there was an abuse of discretion by the trial court in interrogating different witnesses during the trial of the case, which was prejudicial to the substantial rights of the defendant, the judgment of conviction will be reversed."

In Cosby v. State, 30 Okla. Cr. 294, 236 Pac. 51, this court, in the third paragraph of the syllabus, said:

"A trial judge should refrain from any act or expression indicating his opinion upon any matter of fact occurring upon the trial, or his opinion of the credibility or probity of any witness testifying in the case."

In the body of the opinion, the court says:

"During the course of the trial, the plaintiff in error called Ed Wheeler as a witness in his behalf, who testified that one of the jugs of whisky belonged to him, whereupon the court, in the presence of the jury, ordered the sheriff to take charge of the witness and the county attorney to file a complaint against him. Defendant excepted, and the court thereupon admonished the jury not to consider anything he had said with reference to having the witness arrested. This proceeding could not have resulted otherwise than to convey to the jury the opinion that the court strongly disapproved of the conduct of the witness, and may have influenced the jury in its verdict. The jury generally regard a presiding judge whom they serve with great respect and give much weight to his opinions or

views if by chance they should come to their knowledge. A judge should, therefore, be particularly circumspect in his conduct and in the proceedings before him that no intimation of * * * the credibility or character of a witness should be made in their presence. There would seem to be no need for an order to arrest the witness in question in the presence of the jury, and to do so was prejudicial to the rights of plaintiff in error."

In Klaassen v. State, 39 Okla. Cr. 402, 266 Pac. 495, in the first paragraph of the syllabus, this court said the trial judge should refrain from any act or expression of opinion on any matter of fact occurring, or the credibility of any witness testifying in a case, citing Reed v. State and Cosby v. State, supra.

There seems to be no necessity for the trial court to direct the county attorney, in the presence of the jury, to hold the witness Bill Meggs. The remarks of the court clearly indicated that he believed the witness Meggs was committing perjury, and, when he said that they are trying to dodge but would not get by with it, it left the impression on the jury that the defendant as well as the witness testifying in his behalf was trying to avoid the law. As the evidence against the defendant was circumstantial, the remarks of the court were highly prejudicial to the rights of the defendant and deprived him of that fair and impartial trial which is guaranteed to him under the Constitution of the United States, this state, and its laws. The action of the court in ordering the witness Meggs held in custody, in the presence of the jury, may have influenced the jury in returning the verdict it returned, as the jurors generally regard the presiding judge with great respect and give much weight to his opinion or views, if perchance they should come to their knowledge.

For the errors herein stated, the case is reversed.

EDWARDS, P. J., and CHAPPELL, J., concur.